**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **JENNIFER LOWERY-BELL** | * | |
| Plaintiff | * | |
| v. | * | Case No. 05cv2565 RWT |
| **UNIVERSITY OF MARYLAND** | * | |
| and | * | |
| **LAW SCHOOL ADMISSION COUNCIL, INC.,** | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

On September 15, 2005, Jennifer Lowery-Bell ("Plaintiff") filed a Complaint, *pro se*, against the University of Maryland ("UMD") and the Law School Admissions Council ("LSAC"). In her Complaint, she alleges that Defendants denied her reasonable accommodations for her sensitivity to plastics in conjunction with the administration of the Law School Admissions Test ("LSAT"), offered by LSAC at UMD on February 12, 2005.

Defendants LSAC and UMD have each moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6); in the alternative, UMD moves for summary judgment. For the reasons articulated below, this Court will grant both Motions to Dismiss by separate order.

**SUMMARY OF PLAINTIFF'S PLEADINGS**

Plaintiff's Complaint centers around her assertion that Defendants denied her reasonable accommodations in conjunction with the February 12, 2005, LSAT test administration ("February LSAT"). She seeks an injunction against both Defendants, which would require them to provide her

with her desired accommodations for a future LSAT test administration, and to provide their test center personnel with "sensitivity training." She also seeks an injunction against LSAC, requiring it to undertake "a study of LSAC interaction with Americans with Disabilities who have been candidates to take the LSAT."

In her Surreply,[1] Plaintiff raises new allegations, pertaining to LSAC's December 3, 2005, administration of the LSAT at Bowie State University ("December LSAT"). Plaintiff contends that LSAC again failed to provide her with reasonable accommodations in connection with this test date. Plaintiff seeks an injunction which would require LSAC to permit her to bring a wooden table covered with a cotton cloth, a wooden chair, and a mask when a wooden table and chair are not available at her chosen test site. She also asks the Court to enjoin LSAC from requiring her to take the LSAT in a separate room from non-disabled candidates "unless the alternate venue can be assessed by [Plaintiff] to be of equal or better environmental quality to the said same test venue."

## ANALYSIS

At the outset, the Court must note that Plaintiff's Complaint consists of several pages summarizing the factual background of the case, a section alleging that both Defendants have violated the Americans with Disabilities Act ("ADA"), and a list of demands. As such, Plaintiff's Complaint clearly does not comply with the Federal Rules of Civil Procedure. *See generally* Fed. R. Civ. P. 8(a); 10(b). The Court, however, must construe all pleadings "as to do substantial justice," Fed. Rule Civ. P. 8(f), particularly as related to *pro se* filings, *see Haines*, 404 U.S. at 520,

---

[1] Defendant LSAC correctly notes that Plaintiff's Surreply, filed without leave of the Court, is improper under Local Rule 105(2)(a). Nonetheless, because the Court does not hold *pro se* litigants to the same stringent standards as attorneys, see *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court will not strike Plaintiff's Surreply, and will grant her Motion for Leave to File a Sur-Reply.

and therefore, will overlook such defects to the extend possible.

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Such a motion may be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In its determination, the Court must consider all well-pled allegations in a complaint as true, see *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff." The Court will consider any exhibits attached to a complaint to be part of said complaint. *See* Fed. R. Civ. P. 10(c).

In her Complaint, Plaintiff asserts that Defendants have violated the ADA. In pertinent part, the ADA provides: "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. For the purposes of the ADA, a person has a "disability" if they have "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2).

To state a claim under the ADA a plaintiff's complaint must allege that she has a disability which impairs a major life activity. *See Baird v. Rose*, 192 F.3d 462, 467 (1999); *see also Cox v. Civista Med. Ctr.*, 16 Fed. Appx. 185, 186 (4th Cir. 2001). Even after a broad reading of Plaintiff's Complaint, and attachments thereto, the Court cannot find that Plaintiff has ever alleged that she has an impairment that limits a major life activity. While Plaintiff has noted that she has a "sensitivity" to plastics, rubber, and perfumes, Plaintiff has made no allegation as to the nature or severity of this allergy, and how it interferes, if at all, with a major life activity under the ADA.

Because Plaintiff filed her Complaint *pro se*, the Court might ordinarily be inclined to grant leave to Plaintiff to file an Amended Complaint, so that she could properly allege the existence of a disability under the ADA. The facts of this case, however, do not warrant such action, because even if Plaintiff had alleged the existence of a disability under the ADA, she would not be entitled to relief, as her request for accommodations was untimely.

Attachments to Plaintiff's Complaint and Defendants' Motions to Dismiss include the LSAT Accommodations Form for Candidates with Disabilities. This form clearly states that LSAC required any requests for accommodations for the February LSAT to be received by January 12, 2005. *See generally* 28 C.F.R. § 36 App. B (providing analysis of 28 C.F.R. § 36.309, and noting, *inter alia*, that organizations that administer examinations may have reasonable deadlines, in advance of examinations, by which time candidates must submit appropriate documentation and any requested accommodations). In a form dated August 18, 2004, Plaintiff requested a wooden chair and desk, and a facial mask for use in conjunction with the February LSAT at UMD. In a letter to Plaintiff dated January 13, 2005, LSAC granted Plaintiff's requested accommodations. However, in a letter dated February 3, 2005, LSAC informed Plaintiff that UMD did not have a purely wooden table available for Plaintiff; LSAC therefore offered to allow Plaintiff to bring her own wooden table and chair to use during the test. Plaintiff apparently agreed to bring her own table, but only if it could be covered with a cotton cloth.[2] LSAC denied her request for a further accommodation—namely, the cotton cloth—apparently citing both security concerns and the untimeliness of the new request. Even assuming, *arguendo*, that Plaintiff has a disability under the ADA, she is "not entitled to the accommodation of her choice, but only to a reasonable

---

[2] The Court has found nothing in the record which explains Plaintiff's alleged need for a cotton cloth.

-4-

accommodation." *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1286 (11th Cir. 1997). LSAC clearly outlined a reasonable timetable for candidates with disabilities to request accommodations, which Plaintiff ignored in making a last-minute request to use a cotton cloth. *See Varad v. Barshak*, 261 F.Supp. 2d. 47, 55 (D.Mass. 2003) (holding that the defendant, the Massachusetts Board of Bar Examiners, did not violate the ADA in failing to fulfill the plaintiff's untimely oral request for accommodation, because the plaintiff failed to follow defendant's disseminated instructions regarding accommodations requests, and make a timely written request for accommodations). Moreover, LSAC's decision to grant Plaintiff's original request to use a wooden table, but without a cotton cloth, was reasonable, considering the utter lack of documentation as to the necessity of said cloth, the untimely notice of the request, and potential security concerns. *See id*.

As noted above, in Plaintiff's Surreply, she raises new allegations pertaining to the December LSAT at Bowie State University, and asks the Court for different relief. Considering that these new allegations pertain to alleged violations of the ADA which post-date the commencement of this suit—entirely separate from the allegations surrounding the February LSAT raised in Plaintiff's Complaint—they certainly need not be addressed by the Court. But even if the Court were to address these new issues, out of an abundance of consideration for Plaintiff's status as a *pro se* litigant, the facts presented would not dictate any different result. In her Surreply, Plaintiff contends that LSAC again failed to provide her with reasonable accommodations, this time in connection with the December LSAT. Plaintiff admits, however, that, again, she was provided with her requested accommodations: a wooden table and chair, and permission to bring a mask. Nonetheless, Plaintiff now complains that she would have been required to take the test in a different room than other test

takers. She asserts that the rooms offered to her were unacceptable, as they contained "rubberized carpet" and/or "plastic computers."[3] As a result, Plaintiff now asks this Court, in addition to requiring LSAC to provide her with her originally-requested accommodations, to enjoin LSAC from preventing her "from being tested in the same test venue as the non-disabled candidates unless the alternate venue can be assessed by Lowery-Bell to be of equal or better environmental quality to the said same test venue." Like her request for a cotton cloth in conjunction with the February LSAT, this untimely request was not made in accordance with LSAC's procedures for obtaining accommodations.[4] *See Varad*, 261 F.Supp. 2d. at 55. Moreover, assuming, *arguendo*, Plaintiff has a disability, LSAC is not required to give her the exact accommodation she requests. *Stewart*, 117 F.3d at 1286. In light of Plaintiff's apparent need to bring a table, LSAC could have reasonably decided that Plaintiff should be tested separately from other candidates. Although Plaintiff ultimately found these separate rooms to be unacceptable, LSAC could not have been expected to anticipate Plaintiff's need to be tested in a room completely devoid of plastic and rubber, since Plaintiff had never requested such an accommodation.

Finally, the Court notes that because Defendant UMD it is a public entity under Md. Code Ann., Educ. § 12-101(b)(5),[5] it is not subject to Title III of the ADA. Contrary to Plaintiff's

---

[3] Apparently because she did not find these accommodations acceptable, Plaintiff did not take the December LSAT.

[4] Plaintiff does not include specific information as to when she requested, if ever, to be tested in the same room as non-disabled candidates. It seems clear, however, that she was given the option of being tested in one of the two rooms she found to be unacceptable after receiving a letter from LSAC dated November 15, 2005.

[5] Although Defendant UMD cites Md. Code Ann., Educ. § 12-101(b)(4) in its Motion to Dismiss, it appears that the subsections of Md. Code Ann., Educ. § 12-101(b) were renumbered in 2005. The portion of the statute pertinent to the Court's analysis in the instant case is now codified at Md. Code Ann., Educ. § 12-101(b)(5).

assertion, UMD's act of permitting a private entity to use its facilities does not make Title III of the ADA applicable to UMD.  *See Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 882 (9th Cir. 2004) (holding that a public university system that owned the arena where a privately-run rodeo was held did not have any obligations under Title III of the ADA). Consequently, because Title III of the ADA does not apply to UMD, it does not obligate UMD to provide any disabled individual with accommodations.

## CONCLUSION

For the foregoing reasons, this Court will grant Defendants' Motions to Dismiss by separate order.


DATE:   9/20/06                                                  /s/                        
                                                         ROGER W. TITUS
                                                         UNITED STATES DISTRICT JUDGE